IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Felicia Hankins, Personal Representative of the Estate of Jordan Hankins, <br><br> Plaintiff, <br><br> v. <br><br> Alpha Kappa Alpha Sorority, Inc.; Alpha Kappa Alpha Sorority, Inc., Gamma Chi Chapter; Alpha Kappa Alpha Sorority, Inc., Delta Chi Omega Chapter; Kathy A. Walker Steele; Alexandria Anderson; Jalon Brown; Alexandria Clemons; Cariana Chambers; Raven Smith; Bianca Valdez; Ava Thompson Greenwell; and Ashanti Madlock-Henderson, <br><br> Defendants. | Case No. 19-147 <br><br><br> **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

NOW COMES the Plaintiff, Felicia Hankins, Personal Representative of the Estate of Jordan Hankins, by and through her attorneys, Robins Kaplan LLP and Thomas E. Vaughn & Associates, and for her Complaint against Defendants Alpha Kappa Alpha Sorority, Inc.; Alpha Kappa Alpha Sorority, Inc., Gamma Chi Chapter; Alpha Kappa Alpha Sorority, Inc., Delta Chi Omega Chapter; Kathy A. Walker Steele; Alexandria Anderson; Jalon Brown; Alexandria Clemons; Cariana Chambers; Raven Smith; Bianca Valdez; Ava Thompson Greenwell; and Ashanti Madlock-Henderson, states as follows:

## INTRODUCTION

1.      This case arises from the wrongful death of Jordan Hankins ("Hankins"), a student at Northwestern University and pledge to Alpha Kappa Alpha Sorority, Inc. ("AKA Sorority").  During the pledging process, Hankins was subjected to various forms of hazing that caused her severe anxiety and depression.  As a result of the severe anxiety and depression from hazing, Hankins hung herself in her dorm room on January 9, 2017.  Plaintiff brings this action to recover for damages suffered by Hankins and due to Hankins' death.

## PARTIES AND JURISDICTION

2.      Plaintiff Felicia Hankins is a resident and citizen of Indiana and the mother of decedent Jordan Hankins.  Plaintiff was appointed personal representative of the Estate of Jordan Hankins on February 24, 2017, by the Probate Court of Marion County, Indiana, and is authorized to take possession of and collect the estate of Jordan Hankins and to do all acts required of a personal representative by law without court supervision.

3.      Alpha Kappa Alpha Sorority, Inc., is a not-for-profit corporation with its principal place of business and citizenship in Chicago, Cook County, Illinois.

4.      Alpha Kappa Alpha Sorority, Inc., Gamma Chi Chapter ("Gamma Chi") is an undergraduate chapter of Alpha Kappa Alpha Sorority, Inc., chartered and recognized at Northwestern University in Evanston, Cook County, Illinois.

5.      Gamma Chi operates under the Constitution, by-laws, mandates and direction of Alpha Kappa Alpha Sorority, Inc.

89543972.1

6.      Gamma Chi is a member of the Central Region of Alpha Kappa Alpha Sorority, Incorporated.

7.      Alpha Kappa Alpha Sorority, Inc., Delta Chi Omega ("Delta Chi Omega") is a graduate chapter of AKA Sorority in Evanston, Cook County, Illinois.

8.      Delta Chi Omega operates under the Constitution, by-laws, mandates and direction of AKA Sorority.

9.      Delta Chi Omega is a member of the Central Region of AKA Sorority.

10.     The Central Region of AKA Sorority encompasses 92 graduate and undergraduate chapters located in the states of Illinois, Wisconsin, Indiana, Kentucky, Minnesota, North Dakota, South Dakota, and the cities of St. Louis and Cape Girardeau, Missouri.

11.     Kathy A. Walker Steele served as the Central Regional Director for AKA Sorority from 2014-2018.

12.     Kathy A. Walker Steele is a resident and citizen of Illinois.

13.     Alexandria Anderson was a student at Northwestern University and a member of Gamma Chi.

14.     Upon information and belief, Alexandria Anderson is a resident and citizen of Georgia.

15.     Upon information and belief, Alexandria Anderson is a resident and citizen of Illinois.

16.     Jalon Brown was a student at Northwestern University and a member of Gamma Chi.

3

17.     Upon information and belief, Jalon Brown is a resident and citizen of Missouri.

18.     Alexandria Clemons was a student at Northwestern University and a member of Gamma Chi.

19.     Upon information and belief, Alexandria Clemons is a resident and citizen of Illinois.

20.     Upon information and belief, Alexandria Clemons is a resident and citizen of California.

21.     Cariana Chambers was a student at Northwestern University and a member of Gamma Chi.

22.     Upon information and belief, Cariana Chambers is a resident and citizen of the Virginia.

23.     Raven Smith was a student at Northwestern University and initiated into Gamma Chi.

24.     Raven Smith became a member of Chi Omega Omega, a graduate chapter of AKA Sorority in Chicago, Illinois, after graduating from Northwestern University.

25.     Raven Smith is a resident and citizen of Illinois.

26.     Bianca Valdez was a student at Northwestern University and initiated into Gamma Chi.

27.     Bianca Valdez became a general member of AKA Sorority after graduating from Northwestern University.  A general member of AKA Sorority is a

member who is financially active with the sorority but not affiliated with or active with a specific chapter.

28.     Bianca Valdez is a resident and citizen of Illinois.

29.     Ava Thompson Greenwell served as the graduate advisor to Gamma Chi in 2015, 2016, and 2017 and was a member of Delta Chi Omega.

30.     Ava Thompson Greenwell is a resident and citizen of Illinois.

31.     Ashanti Madlock-Henderson served as the assistant graduate advisor to Gamma Chi in 2016 and 2017 and was a member of Delta Chi Omega.

32.     Ashanti Madlock- Henderson is a resident and citizen of Illinois.

33.     Felicia Hankins brings her Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy far exceeds $75,000.

34.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b). Defendants AKA Sorority, Delta Chi Omega, Gamma Chi, Kathy A. Walker Steele, Alexandria Anderson, Alexandria Clemons, Raven Smith, Bianca Valdez, Ava Thompson Greenwell, and Ashanti Madlock-Henderson reside and maintain citizenship in the state of Illinois. A corporation is deemed to reside in any judicial district where its contact would be sufficient to subject it to personal jurisdiction at the time the action is commenced. Defendants AKA Sorority, Delta Chi Omega, Gamma Chi, Alexandria Anderson, Alexandria Clemons, Raven Smith, Bianca Valdez, Ava Thompson Greenwell, and Ashanti Madlock-Henderson had a presence in Cook County, Illinois, at all times relevant including the day this action is commenced, within

89543972.1

the boundaries of the United States District Court for the Northern District of Illinois, Eastern Division. A substantial part—if not all—of the events and omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

### *History of Hazing within Alpha Kappa Alpha Sorority, Incorporated*

35.     AKA Sorority is a sorority with nearly 300,000 members worldwide (75,000 financially active), and 1,018 chapters in 47 U.S. States and 1 U.S. Territory.

36.     Members of the sorority can be initiated in an undergraduate or graduate chapter. Membership in AKA Sorority is by invitation only.

37.     If you are matriculating as a full-time student attending an accredited four-year college or university, membership into AKA Sorority is obtained through an undergraduate chapter.

38.     All undergraduate chapters of AKA Sorority are supervised by a graduate chapter.

39.     Alpha Kappa Alpha has prohibited hazing since the organization was founded in 1908. In 1999, Alpha Kappa Alpha Sorority reaffirmed its total opposition to hazing with a tougher anti-hazing policy.

40.     AKA Sorority defines hazing as acts that include but are not limited to: (1) Physical acts, such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s); (2) behavior which is directed against any individual(s) for the purpose of causing shame, abuse, insult, humiliation, intimidation or disgrace; and

(3) a variety of prohibited practices including, but not limited to, "underground hazing," "financial hazing," "pre-pledging," "post-pledging" or "post-initiation pledging."

41.     Despite this tougher anti-hazing policy being instituted by AKA Sorority, hazing continues to be a well-known occurrence in the sorority, and women continued to sustain injuries and even death as a result of hazing rituals.

42.     In 2002, three years after AKA Sorority instituted its tougher anti-hazing policies, AKA Sorority was named as a defendant in a lawsuit in California where it was alleged that two women drowned after being lead into the ocean blind folded wearing sweatpants and tennis shoes as part of a hazing ritual in order to gain membership in AKA Sorority.

43.     Following the deaths of the women, their families alleged their deaths were the result of a hazing ritual associated with AKA Sorority.  Shortly after that in 2002, Alpha Kappa Alpha placed a moratorium on inducting undergraduate women for approximately a year.

44.     AKA Sorority's hazing culture has continued over the past decade.

45.     In 2013, Lauren Cofield and Laurin Comptin filed a lawsuit in Washington D.C. against AKA Sorority alleging hazing by sorority members.

46.     In February 2018, a dozen AKA Sorority pledges at the University of Pittsburgh notified the police of hazing allegations.

47.     The allegations included that the women were paddled, punched, kicked, slapped, and forced to eat rotten food.

89543972.1

48.     AKA Sorority is currently suspended at the University of Pittsburg until spring 2028.

49.     In April 2018, the Alpha Beta Chapter of Alpha Kappa Alpha Sorority, Incorporated, located at Fort Valley State University in Georgia, was accused of running a sex ring to pay for the initiation of new members. The graduate adviser was accused of having a role in the sex ring.

50.     It was alleged that women seeking membership in Alpha Beta were a part of a prostitution ring at the direction of members of AKA Sorority, including the faculty advisor of Alpha Beta, to raise money for pledge fees.

51.     AKA Sorority's national office opened an investigation to look into "unauthorized activities and misconduct involving current and former members" related to the sex ring at Alpha Beta Chapter.

### *History of Hazing within Gamma Chi*

52.     Gamma Chi has a history of hazing woman before they are initiated into the sorority (pre-pledging) or after women are initiated into the sorority (post-pledging/post-initiation pledging).

53.     In January 2016, Defendant Cariana Chambers and Kayla Famurewa, both members of Gamma Chi at the time, were suspended from AKA Sorority for violating the sorority's hazing policy.

54.     The hazing involved pre-pledging women who were not members of the sorority, but were seeking membership.

55.     The hazing included physical and mental abuse of the women seeking membership.  Examples of such hazing included, but was not limited to, abusive physical contact, verbal abuse, and financial exploitation.

56.     The women who were found in violation of the AKA Sorority hazing policy who were not members of the sorority were punished by not being considered for membership in the sorority in the fall of 2015 and spring of 2016.

### Hazing of Jordan Hankins

57.     In October 2016, Jordan Hankins attended a "rush" event hosted by Gamma Chi, under the direction of Delta Chi Omega.

58.     The "rush" event was authorized by the Central Regional Director of Alpha Kappa Alpha Sorority, Inc. and the international office of Alpha Kappa Alpha Sorority, Incorporated.

59.     On October 10, 2016, Defendant Ava Thompson Greenwell sent Jordan Hankins an e-mail advising she was "cleared to move to the next stage of the Alpha Kappa Alpha Sorority, Inc. membership process."

60.     Between October 10, 2016, and November 20, 2016, Jordan Hankins, and ten additional women, known as line sisters, completed the Membership Intake Process.

61.     Some of Jordan Hankins' line sisters were women who had been prevented from joining the sorority before November 2016 because of violations of the sorority's hazing policy.

62.     Some of the line sisters had been subject to hazing from other members of Gamma Chi in the past, including Defendants Cariana Chambers, Raven Smith, and Bianca Valdez.

63.     On November 20, 2016, Jordan Hankins and her line sisters performed a campus introduction show, sometimes referred to as a probate show, at McCormick Tribune Center Forum on Northwestern's campus.

64.     Following the probate show, Jordan Hankins was advised by members of AKA Sorority that as a condition of membership to be accepted she must agree to a post-initiation pledge process.

65.     Jordan Hankins began to post-pledge with some of her line sisters she participated in Membership Intake Process with shortly after the probate show on November 20, 2016.

66.     As part of the pledging process, Hankins was subjected to several instances of severe hazing.

67.     While post-initiation pledging, Jordan Hankins was subjected to physical abuse including paddling, verbal abuse, mental abuse, financial exploitation, sleep deprivation, items being thrown and dumped on her, and other forms of hazing intended to humiliate and demean her.

68.     These incidents negatively affected Jordan Hankins' physical, mental, and emotional health.

89543972.1

69.     Jordan Hankins communicated to members of AKA Sorority, including individually named defendants, that the hazing was triggering her PTSD, causing severe anxiety and depression and that she was having suicidal thoughts.

70.     Eventually the hazing got the best of Jordan Hankins and on January 9, 2017, Jordan Hankins was found hanging in her dorm room.  First responders were called, and she was pronounced dead when first responders arrived.

**COUNT I**
**Negligent Supervision as to Defendant Alpha Kappa**
**Alpha Sorority, Incorporated**
**(Wrongful Death Claim)**

71.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

72.     Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of  physical  and mental injury including such mental injury that would lead to suicide associated with hazing.

73.     AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

74.     AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process.  This is why membership is by invitation only.

75.     No AKA Sorority chapter has sole authority to initiate members into the sorority.

89543972.1

76.     AKA Sorority has the sole authority to determine whether an individual can obtain membership in the sorority.

77.     AKA sorority grants authority to chapters to act as agents of the national organization to conduct sorority business and Membership Intake Process.

78.     With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

79.     For undergraduate chapters, in addition to serving as an agent for AKA Sorority, a graduate chapter must also serve as an agent of AKA Sorority to supervise the undergraduate chapter.

80.     Only with authority from AKA Sorority and a graduate chapter acting as an agent and supervisor for AKA Sorority can an undergraduate chapter conduct a Membership Selection Process or other sorority business.

81.     AKA Sorority oversees and supervises all undergraduate membership intake while the Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

82.     Defendant AKA Sorority, by and through its agents, employees, and proxies, were negligent in allowing Hankins to be hazed.  Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

(a)     Permitting and allowing harmful initiation rituals which included physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and other forms of hazing by local Alpha

89543972.1

Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega;

(b)    Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega, about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c)    Failing to adopt reasonable and effective policies to be followed by its local chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful initiation rituals and hazing;

(d)    Failing to take reasonable steps to insure its local chapters, including Gamma Chi and Delta Chi Omega, followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)    Failing to take reasonable steps to learn whether its local chapters, including Gamma Chi and Delta Chi Omega, were following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)    Failing to train members of Gamma Chi and Delta Chi Omega on the anti-hazing policy; and

(g)    Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

83.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendant AKA Sorority and its agents were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

89543972.1

84.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

85.     Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

## COUNT II
### Negligent Supervision as to Defendant AKA Sorority
### (Survival Claim)

86.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

87.     Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of physical and mental injury, including such mental injury that would lead to suicide associated with hazing.

88.     AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

89.     AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process.

90.     No AKA Sorority chapter has sole authority to initiate members into the sorority.

91.     AKA sorority has the sole authority to determine whether an individual can obtain membership in the sorority.

89543972.1

92.     With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

93.     Only with authority from AKA Sorority and a graduate chapter acting as an agent and supervisor for AKA Sorority can an undergraduate chapter conduct a Membership Selection Process or other sorority business.

94.     For undergraduate chapters, the graduate chapter supervising the undergraduate chapter, and with authority from AKA Sorority, can then conduct a Membership Selection Process.

95.     AKA Sorority oversees and supervises all undergraduate membership intake while the Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

96.     Defendant AKA Sorority, by and through its agents, employees and proxies, were negligent in allowing Hankins to be hazed.  Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

> (a)     Permitting and allowing harmful initiation rituals which included physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and other forms of hazing by local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega;
>
> (b)     Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega, about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew

15

or should have known such rituals and acts can cause severe depression and/or be fatal;

(c)     Failing to adopt reasonable and effective policies to be followed by its local chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful initiation rituals and hazing;

(d)     Failing to take reasonable steps to insure its local chapters, including Gamma Chi and Delta Chi Omega, followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)     Failing to take reasonable steps to learn whether its local chapters, including Gamma Chi and Delta Chi Omega, were following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)     Failing to train members of Gamma Chi and Delta Chi Omega on the anti-hazing policy; and

(g)     Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

97.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendant AKA Sorority and its agents were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

98.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

99.     Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages

89543972.1

including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

## COUNT III
### Negligent Supervision as to Defendant Delta Chi Omega and Defendant Kathy Walker Steele
### (Wrongful Death Claim)

100.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

101.    Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele owed Hankins a duty to use ordinary care in supervising the initiation rituals of Gamma Chi to reduce the risks of physical and mental injury, including such mental injury that would lead to suicide associated with hazing.

102.    Delta Chi Omega and Central Regional Director Kathy Walker Steele acted as agents and at the direction of AKA Sorority to implement and enforce AKA Sorority's anti-hazing policy.

103.    AKA Sorority outlined in detail the internationally mandated Membership Intake Process and anti-hazing policy. Central Regional Director Kathy Walker Steele and Delta Chi Omega were to implement those internationally mandated processes and policies and enforce them when supervising Gamma Chi in the Membership Intake Process and members post-initiation.

104.    Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele, by and through their agents, employees and proxies, were negligent in allowing Hankins to be hazed.  Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

89543972.1

(a) Permitting and allowing harmful initiation rituals and hazing by Gamma Chi, which required physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping;

(b) Failing to warn Gamma Chi members and Hankins about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c) Failing to adopt reasonable and effective policies to be followed by Gamma Chi to prevent harmful initiation rituals and hazing;

(d) Failing to take reasonable steps to insure Gamma Chi followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e) Failing to take reasonable steps to learn whether Gamma Chi was following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f) Failing to train and supervise chapter advisors.

Defendants were negligent in other respects.

105. It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Walker Steele and Delta Chi Omega were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

106. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

107. Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins,

89543972.1

which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

## COUNT IV
### Negligent Supervision as to Defendant Delta Chi Omega and Central Regional Director Kathy Walker Steele (Survival Claim)

108.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

109.    Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele owed Hankins a duty to use ordinary care in supervising the initiation rituals of Gamma Chi to reduce the risks of physical and mental injury including such mental injury that would lead to suicide associated with hazing.

110.    Delta Chi Omega and Central Regional Director Kathy Walker Steele acted as agents and at the direction of AKA Sorority to implement and enforce AKA Sorority's anti-hazing policy.

111.    AKA Sorority outlined in detail the internationally mandated Membership Intake Process and anti-hazing policy. Central Regional Director Kathy Walker Steele and Delta Chi Omega were to implement those internationally mandated processes and policies and enforce them when supervising Gamma Chi in the Membership Intake Process and members post initiation.

112.    Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele, by and through their agents, employees and proxies, were negligent in allowing Hankins to be hazed.  Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

89543972.1

(a)    Permitting and allowing harmful initiation rituals and hazing by Gamma Chi, which required physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping;

(b)    Failing to warn Gamma Chi members and Hankins about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c)    Failing to adopt reasonable and effective policies to be followed by Gamma Chi to prevent harmful initiation rituals and hazing;

(d)    Failing to take reasonable steps to insure Gamma Chi followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)    Failing to take reasonable steps to learn whether Gamma Chi was following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)    Failing to train and supervise chapter advisors.

Defendants were negligent in other respects.

113.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Walker Steele and Delta Chi Omega were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

114.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

115.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages

including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

## COUNT V
### Negligent Entrustment as to Defendant AKA Sorority
### (Wrongful Death Claim)

116.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

117.    Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of  physical  and mental injury including such mental injury that would lead to suicide associated with hazing.

118.    AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

119.    AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process.

120.    No AKA Sorority chapter has sole authority to initiate members into the sorority.

121.    AKA Sorority has the sole authority to determine whether an individual can obtain membership in the sorority.

122.    AKA sorority grants authority to chapters to act as agents of the national organization to conduct sorority business and Membership Intake Process.

123.    With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

89543972.1

124.    For undergraduate chapters, in addition to serving as an agent for AKA Sorority, a graduate chapter must also serve as an agent of AKA Sorority to supervise the undergraduate chapter.

125.    Only with authority from AKA Sorority and a graduate chapter acting as an agent for AKA Sorority and supervisor can an undergraduate chapter conduct a Membership Intake Process or other sorority business.

126.    AKA Sorority oversees and supervises all undergraduate membership intake while the Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

127.    Defendant AKA Sorority, by and through its agents, employees, and proxies, were negligent in entrusting Delta Chi Omega and Gamma Chi to conduct a Membership Intake Process in October through November 2016.  Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

> (a)    Permitting and allowing harmful initiation rituals which included physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and other forms of hazing by local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega;

> (b)    Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega, about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c)     Failing to adopt reasonable and effective policies to be followed by its local chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful initiation rituals and hazing;

(d)     Failing to take reasonable steps to insure its local chapters, including Gamma Chi and Delta Chi Omega, followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)     Failing to take reasonable steps to learn whether its local chapters, including Gamma Chi and Delta Chi Omega, were following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)     Failing to train members of Gamma Chi and Delta Chi Omega on the anti-hazing policy; and

(g)     Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

128.    AKA Sorority knew or should have known that members of Gamma Chi were recently suspended for violations of the anti-hazing policy and there was a dangerous propensity of Gamma Chi members to continue to engage in hazing.

129.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

130.    Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

## COUNT VI
### Negligent Entrustment as to Defendant AKA Sorority
### (Survival Claim)

131.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

132.     Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of physical and mental injury including such mental injury that would lead to suicide associated with hazing.

133.     AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

134.     AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process.

135.     No AKA Sorority chapter has sole authority to initiate members into the sorority.

136.     AKA Sorority has the sole authority to determine whether an individual can obtain membership in the sorority.

137.     AKA sorority grants authority to chapters to act as agents of the national organization to conduct sorority business and Membership Intake Process.

138.     With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

139.    For undergraduate chapters, in addition to serving as an agent for AKA Sorority, a graduate chapter must also serve as an agent of AKA Sorority to supervise the undergraduate chapter.

140.    Only with authority from AKA Sorority and a graduate chapter acting as an agent for AKA Sorority as a supervisor can an undergraduate chapter conduct a Membership Intake Process or other sorority business.

141.    AKA Sorority oversees and supervises all undergraduate membership intake while the Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

142.    Defendant AKA Sorority, by and through its agents, employees and proxies, were negligent in entrusting Delta Chi Omega and Gamma Chi to conduct a Membership Intake Process in October through November 2016.  Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

(a)    Permitting and allowing harmful initiation rituals which included physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and other forms of hazing by local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega;

(b)    Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega, about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

89543972.1

      (c)     Failing to adopt reasonable and effective policies to be followed by its local chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful initiation rituals and hazing;

      (d)     Failing to take reasonable steps to insure its local chapters, including Gamma Chi and Delta Chi Omega, followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

      (e)     Failing to take reasonable steps to learn whether its local chapters, including Gamma Chi and Delta Chi Omega, were following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

      (f)     Failing to train members of Gamma Chi and Delta Chi Omega on the anti-hazing policy; and

      (g)     Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

143.    AKA Sorority knew or should have known that members of Gamma Chi were recently suspended for violations of the anti-hazing policy and there was a dangerous propensity of Gamma Chi members to continue to engage in hazing.

144.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

145.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

89543972.1

**COUNT VII**
**Negligence as to Defendants AKA Sorority, Central Regional**
**Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi**
**(Wrongful Death Claim)**

146.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

147.    At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendant Central Regional Director Kathy Walker Steele, Defendant Delta Chi Omega, Defendant Gamma Chi, and its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

148.    AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only.  No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

149.    Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega, and Gamma Chi, act as agents to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

150.    AKA Sorority maintains full control of creating the sororities membership code of conduct, member discipline such as suspension and expulsion is determined by the national sorority, and local chapters have to get authority for membership activities from AKA Sorority.  AKA Sorority holds out each local graduate and undergraduate

chapter, including but not limited to, Delta Chi Omega and Gamma Chi, and their duly appointed or elected officers and members, as its agents with authority to act on its behalf.

151.    At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

152.    Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

153.    Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

154.    Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during initiation rituals to the foreseeable consequences of hazing, including severe depression and suicide.

28

89543972.1

155. From June of 2015 to January 2017, Defendants, directly or through their agents, committed one or more of the following negligent acts and omissions:

 (a) Planned, promoted, and/or participated in initiation rituals, which included hazing Hankins;

 (b) Required prospective sorority members or pledges, including Hankins, to participate in initiation rituals that included hazing, as a condition of membership in the sorority;

 (c) Required newly initiated members to participate in post-initiation pledging and hazing as a condition of acceptance and full membership in the sorority; and

 (d) Failed to report hazing activities being conducted by sorority members.

Defendants were negligent in other respects.

156. At all relevant times, all Defendants were acting within the scope of their agency relationship.

157. It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Walker Steele, Delta Chi Omega, and Gamma Chi were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

158. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

89543972.1

159.    Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**COUNT VIII**
**Negligence as to Defendants AKA Sorority,**
**Delta Chi Omega and Gamma Chi**
**(Survival Claim)**

160.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

161.    At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendants Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

162.    AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only.  No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

163.    Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi act as agents to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

89543972.1

164.    AKA Sorority maintains full control of creating the sororities' membership code of conduct, member discipline such as suspension and expulsion is determined by the national sorority, and local chapters have to get authority for membership activities from AKA Sorority.

165.    At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

166.    Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

167.    Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

168.    Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during

initiation rituals to the foreseeable consequences of hazing, including depression and suicide.

169.     From June of 2015 to January 2017, Defendants, directly or through their agents, committed one or more of the following negligent acts and omissions:

> (a)     Planned, promoted, and/or participated in initiation rituals, which included hazing Hankins;
>
> (b)     Required prospective sorority members or pledges, including Hankins, to participate in initiation rituals that included hazing, as a condition of membership in the sorority;
>
> (c)     Required newly initiated members to participate in post-initiation pledging and hazing as a condition of acceptance and full membership in the sorority; and
>
> (d)     Failed to report hazing activities being conducted by sorority members.

Defendants were negligent in other respects.

170.     At all relevant times, all Defendants were acting within the scope of their agency relationship.

171.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Walker Steele, Delta Chi Omega, and Gamma Chi were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

172.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and

hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

173.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

## COUNT IX
### Negligence as to Defendants AKA Sorority, Delta Chi Omega and Gamma Chi
### (Wrongful Death Claim)

174.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

175.    At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendants Kathy Walker Steele, Delta Chi Omega, Gamma Chi and its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

176.    AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only.  No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

177.    Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi act as agents to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

89543972.1

178.    AKA Sorority maintains full control of member discipline, and local chapters have to get authority for membership activities from AKA Sorority. AKA Sorority holds out each local graduate and undergraduate chapter, including but not limited to, Delta Chi Omega and Gamma Chi, and their duly appointed or elected officers and members, as its agents with authority to act on its behalf.

179.    At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

180.    Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

181.    Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

182.    Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during

34

initiation rituals to the foreseeable consequences of hazing, including depression and suicide.

183.    At all relevant times, all Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, and Gamma Chi were acting within the scope of their agency relationship.

184.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

185.    Defendants violated 720 ILCS 5/12C-50.

186.    720 ILCS 5/12C-50 was designed to prevent injury to a class of persons to which Hankins belonged.

187.    720 ILCS 5/12C-50 penalizes those requiring a student to perform an act for the purpose of induction into any group or organization when that act is not sanctioned by the educational institution and results in bodily harm.

188.    Northwestern University did not sanction hazing.

189.    By hazing Hankins, Defendants, directly or through their agents or duly appointed or elected officers, members and pledges, violated 720 ILCS 5/12C-50. Illustrations of said violation, cited by way of example but not limitation, are as follows:

(a)    Physical abuse;

(b)    Mental abuse;

35

      (c)     Verbal abuse;

      (d)     Sleep deprivation; and

      (e)     Financial Exploitation.

Defendants violated the statute in other ways.

190.    Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**COUNT X**
**Negligence as to Defendants AKA Sorority, Delta Chi Omega and Gamma Chi**
**(Survival Claim)**

191.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

192.    At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendants Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

193.    AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only.  No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

194.    Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi act as agents

to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

195.     AKA Sorority maintains full control of member discipline, and local chapters have to get authority for membership activities from AKA Sorority.  AKA Sorority holds out each local graduate and undergraduate chapter, including but not limited to, Delta Chi Omega and Gamma Chi, and their duly appointed or elected officers and members, as its agents with authority to act on its behalf.

196.     At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

197.     Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

198.     Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

89543972.1

199. Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during initiation rituals to the foreseeable consequences of hazing, including depression and suicide.

200. At all relevant times, all Defendants were acting within the scope of their agency relationship.

201. It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

202. Defendants violated 720 ILCS 5/12C-50.

203. 720 ILCS 5/12C-50 was designed to prevent injury to a class of persons to which Hankins belonged.

204. 720 ILCS 5/12C-50 penalizes those requiring a student to perform an act for the purpose of induction into any group or organization when that act is not sanctioned by the educational institution and results in bodily harm.

205. Northwestern University did not sanction hazing.

206. By hazing Hankins, Defendants, directly or through their agents or duly appointed or elected officers, members and pledges, violated 720 ILCS 5/12C-50. Illustrations of said violation, cited by way of example but not limitation, are as follows:

(a)     Physical abuse;

(b)     Mental abuse;

(c)     Verbal abuse;

(d)     Sleep deprivation; and

(e)     Financial Exploitation.

Defendants violated the statute in other ways.

207.    At all relevant times, all Defendants were acting within the scope of their agency relationship.

208.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

209.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

## COUNT XI
### Negligence as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson
### (Wrongful Death Claim)

210.    At all material times, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson owed a duty of reasonable care not to subject Jordan Hankins to the foreseeable consequences of required hazing during initiation rituals.

211. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson acting knowingly and willingly in execution of post-initiation pledging, planned, approved, promoted, required, and participated in, jointly and in concert, committed one or more of the following negligent acts and omissions:

    (a) Planned and promoted multiple hazing activities, in which Gamma Chi initiates, including Jordan Hankins, as a condition to membership in the sorority, had to be subjected to various forms of hazing including physical abuse, mental abuse, verbal abuse, financial exploitation, and sleep deprivation;

    (b) Required Jordan Hankins, as a condition to membership in the sorority, to call sorority members at specific times to be subjected to verbal abuse;

    (c) Required Jordan Hankins, as a condition to membership in the sorority, to subject herself to physical abuse;

    (d) Failed to seek medical attention for Jordan Hankins when she advised she was "mentally unstable" and having suicidal thoughts;

    (e) Failed to report the hazing activities to agents, officers, and/ or members of AKA Sorority; and

    (f) Were otherwise careless and negligent.

212. It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

213. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and

hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

214.     Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

## COUNT XII
### Negligence as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson
### (Survival Claim)

215.     At all material times, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson owed a duty of reasonable care not to subject Jordan Hankins to the foreseeable consequences of required hazing during initiation rituals.

216.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson acting knowingly and willingly in execution of post-initiation pledging, planned, approved, promoted, required, and participated in, jointly and in concert, committed one or more of the following negligent acts and omissions:

> (a)     Planned and promoted multiple hazing activities, in which Gamma Chi initiates, including Jordan Hankins, as a condition to membership in the sorority, had to be subjected to various forms of hazing including physical abuse, mental abuse, verbal abuse, financial exploitation, and sleep deprivation;

(b)     Required Jordan Hankins, as a condition to membership in the sorority, to call sorority members at specific times to be subjected to verbal abuse;

(c)     Required Jordan Hankins, as a condition to membership in the sorority, to subject herself to physical abuse;

(d)     Failed to seek medical attention for Jordan Hankins when she advised she was "mentally unstable" and having suicidal thoughts;

(e)     Failed to report the hazing activities to agents, officers, and/ or members of AKA Sorority; and

(f)     Were otherwise careless and negligent.

217.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

218.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

219.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

89543972.1

**COUNT XIII**

**Intentional Infliction of Emotional Distress as to Defendants Anderson,
Brown, Clemons, Chambers, Smith, Valdez,
Thompson Greenwell, and Madlock-Henderson
(Wrongful Death Claim)**

220.   Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

221.   Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,
Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care
to protect Hankins from the dangers of hazing.

222.   Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,
Thompson Greenwell, and Madlock-Henderson intentionally hazed Hankins with the
intention of inflicting severe emotion distress or knew there was a high probability that
hazing would cause such distress.  Illustrations of said conduct, cited by way of
example but not limitation, are as follows:

      (a)   Verbal abuse;

      (b)   Physical abuse;

      (c)   Emotional abuse;

      (d)   Mental abuse; and

      (e)   Financial exploitation.

223.   At all relevant times, Defendants knew or should have known the hazing
activities were extreme, outrageous, and unlawful.

224.   Defendants' conduct was intentional and done with the purpose of
causing Hankins to suffer humiliation, mental anguish, and emotional and physical
distress.

225.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

226.     As a direct and proximate result of one or more of the foregoing acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, verbal abuse, mental abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe emotional distress and ultimately commit suicide.

227.     Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**COUNT XIV**
**Intentional Infliction of Emotional Distress as to Defendants**
**Anderson, Brown, Clemons, Chambers, Smith, Valdez,**
**Thompson Greenwell, and Madlock-Henderson**
**(Survival Claim)**

228.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

229.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care to protect Hankins from the dangers of hazing.

230.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson intentionally hazed Hankins with the intention of inflicting severe emotion distress or knew there was a high probability that hazing would cause such distress.  Illustrations of said conduct, cited by way of example but not limitation, are as follows:

       (a)    Verbal abuse;

       (b)    Physical abuse;

       (c)    Emotional abuse;

       (d)    Mental abuse; and

       (e)    Financial exploitation.

231.    At all relevant times, Defendants knew the hazing activities were extreme, outrageous, and unlawful.

232.    Defendants' conduct was intentional and done with the purpose of causing Hankins to suffer humiliation, mental anguish, and emotional and physical distress.

233.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

234.    As a direct and proximate result of one or more of the foregoing acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing

consisting of physical abuse, emotional abuse, verbal abuse, mental abuse, sleep

deprivation, and financial exploitation, which caused her to suffer severe emotional

distress and ultimately commit suicide.

235.    Plaintiff brings this count pursuant to the Illinois Survival Act as the

Personal Representative of the Estate of Jordan Hankins, which suffered damages

including being made an object of ridicule, embarrassment, humiliation, pain, and

suffering.

### COUNT XV
### Negligent Infliction of Emotional Distress as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson
### (Wrongful Death Claim)

236.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

237.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,

Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care

to protect Hankins from the dangers of hazing.

238.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,

Thompson Greenwell, and Madlock-Henderson were agents, members, officers, and

pledges of AKA Sorority acting within their authority as such from June 2015 until

January 2017.

239.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,

Thompson Greenwell, and Madlock-Henderson, individually, and as agents, officers,

and members of AKA Sorority, breached their duty of care when they hazed Hankins.

Illustrations of said hazing, cited by way of example but not limitation, are as follows:

(a)     Verbal abuse;

(b)     Physical abuse;

(c)     Emotional abuse;

(d)     Mental abuse; and

(e)     Financial exploitation.

240.    At all relevant times, Defendants knew or should have known of the risks of severe emotional distress, depression, and suicide arising from hazing.

241.    At all relevant times, all Defendants were acting within the scope of their agency relationship.

242.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

243.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

244.    Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**COUNT XVI**
**Negligent Infliction of Emotional Distress as to Defendants Anderson,**
**Brown, Clemons, Chambers, Smith, Valdez,**
**Thompson Greenwell, and Madlock-Henderson**
**(Survival Claim)**

245.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

246.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,

Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care

to protect Hankins from the dangers of hazing.

247.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,

Thompson Greenwell, and Madlock-Henderson were agents, members, officers, and

pledges of AKA Sorority acting within their authority as such from June 2015 until

January 2017.

248.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez,

Thompson Greenwell, and Madlock-Henderson, individually, and as agents, officers,

and members of AKA Sorority, breached their duty of care when they hazed Hankins.

Illustrations of said hazing, cited by way of example but not limitation, are as follows:

(a)     Verbal abuse;

(b)     Physical abuse;

(c)     Emotional abuse;

(d)     Mental abuse; and

(e)     Financial exploitation.

249.     At all relevant times, Defendants knew or should have known of the risks

of severe emotional distress, depression, and suicide arising from hazing.

48

250.    At all relevant times, all Defendants were acting within the scope of their agency relationship.

251.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

252.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

253.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

WHEREFORE, Plaintiff prays that judgment be entered against Defendants for actual damages sufficient to compensate for the damages caused by Defendants' intentional conduct and negligence.

89543972.1

Respectfully submitted,

ROBINS KAPLAN LLP

Dated:  January 24, 2019       By: /s/ Brandon E. Vaughn

                Brandon E. Vaughn, #0389110
                800 LaSalle Avenue
                Suite 2800
                Minneapolis, MN 55402
                612-349-8500
                BVaughn@RobinsKaplan.com

THOMAS E. VAUGHN & ASSOCIATES

Dated:  January 24, 2019       By: /s/ Thomas E. Vaughn

                Thomas E. Vaughn, #3123697
                9009 S. Western Avenue
                Chicago, IL 60643
                312-593-0546
                tvaughn@tvaughnlaw.com

ATTORNEYS FOR PLAINTIFF

89543972.1