## IN THE UNITED STATES DISTRICT COURT
## NORTHER DISTRICT OF ILLINOIS
## EASTERN DIVISION

Felicia Hankins, Personal Representative
of the Estate of Jordan Hankins,

                                        plaintiff,


                v.                                              Case No. 19-147
                                                                Judge Edmond E. Chang
Alpha Kappa Alpha Sorority, Inc.; Alpha Kappa
Sorority, Inc., Gamma Chi Chapter; Alpha Kappa
Sorority, Inc., Delta Chi Omega Chapter;
Kathy A. Walker Steele, Alexandria Anderson,
Jalon Brown, Alexandria Clemons, Cariana
Chambers, Raven Smith, Bianca Valdez, Ava
Thompson Greenwell, and Ashanti
Madlock-Henderson

                                        defendants.

### BIANCA VALDEZ'S ANSWER to AMENDED COMPLAINT

NOW COMES defendant Bianca Valdez ("Valdez"), by and through her attorney, Kevin J.

Moore of the Law Office of Kevin J. Moore, P.C., in answer to the amended complaint, states:

### INTRODUCTION

1.      This case arises from the wrongful death of Jordan Hankins ("Hankins"), a student at

Northwestern University and pledge to Alpha Kappa Alpha Sorority, Inc. ("AKA Sorority"). During the

pledging process, Hankins was subjected to various forms of hazing that caused her severe anxiety and

depression. As a result of the severe anxiety and depression from hazing, Hankins hung herself in her

dorm room on January 9, 2017. Plaintiff brings this action to recover for damages suffered by Hankins

and due to Hankins' death.

**ANSWER:  Valdez admits that this case arises from the alleged wrongful death of Jordan**

**Hankins, admits that Hankins was a student at Northwestern University and admits Hankins**

**had pledged to a chapter of Alpha Kappa Alpha sorority during the time described in the**

**amended complaint.  Valdez denies that Hankins was subjected to any form of hazing that**

caused severe anxiety or depression.  Valdez denies that she is liable to Hankins or her estate.

## PARTIES AND JURISDICTION

2.      Plaintiff Felicia Hankins is a resident and citizen of Indiana and the mother of decedent Jordan Hankins. Plaintiff was appointed personal representative of the Estate of Jordan Hankins on February 24, 2017, by the Probate Court of Marion County, Indiana, and is authorized to take possession of and collect the estate of Jordan Hankins and to do all acts required of a personal representative by law without court supervision.

**Answer: Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2.**

3.      Alpha Kappa Alpha Sorority, Inc., is a not-for-profit corporation with its principal place of business and citizenship in Chicago, Cook County, Illinois.

**Answer:          Admitted.**

4.      Alpha Kappa Alpha Sorority, Inc., Gamma Chi Chapter ("Gamma Chi") is an undergraduate chapter of Alpha Kappa Alpha Sorority, Inc., chartered and recognized at Northwestern University in Evanston, Cook County, Illinois.

**Answer:          Admitted.**

5.      Gamma Chi operates under the Constitution, by-laws, mandates and direction of Alpha Kappa Alpha Sorority, Inc.

**Answer:          Admitted.**

6.      Gamma Chi is a member of the Central Region of Alpha Kappa Alpha Sorority, Incorporated.

**Answer:          Admitted.**

7.      Alpha Kappa Alpha Sorority, Inc., Delta Chi Omega ("Delta Chi Omega") is a graduate chapter of AKA Sorority in Evanston, Cook County, Illinois.

**Answer:          Admitted.**

8.    Delta Chi Omega operates under the Constitution, by-laws, mandates and direction of AKA Sorority.

   **Answer:    Admitted.**

9.    Delta Chi Omega is a member of the Central Region of AKA Sorority.

   **Answer:    Admitted.**

10.    The Central Region of AKA Sorority encompasses 92 graduate and undergraduate chapters located in the states of Illinois, Wisconsin, Indiana, Kentucky, Minnesota, North Dakota, South Dakota, and the cities of St. Louis and Cape Girardeau, Missouri.

   **Answer:    Admitted.**

11.    Kathy A. Walker Steele served as the Central Regional Director for AKA Sorority from 2014-2018.

   **Answer:    Valdez admits that Kathy A. Walker Steel served as the Central Regional Director for AKA Sorority but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 11.**

12.    Kathy A. Walker Steele is a resident and citizen of Illinois.

   **Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12.**

13.    Alexandria Anderson was a student at Northwestern University and a member of Gamma Chi.

   **Answer:    Admitted.**

14.    Upon information and belief, Alexandria Anderson is a resident and citizen of Georgia.

   **Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14.**

15.    Upon information and belief, Alexandria Anderson is a resident and citizen of

Illinois.

>    **Answer:**    **Valdez lacks knowledge or information sufficient to form a belief**
>    **about the truth of the allegations in paragraph 15.**

16.    Jalon Brown was a student at Northwestern University and a member of Gamma Chi.

>    **Answer:**    **Admitted.**

17.    Upon information and belief, Jalon Brown is a resident and citizen of Missouri.

>    **Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about**
>    **the truth of the allegations in paragraph 17.**

18.    Alexandria Clemons was a student at Northwestern University and a member of
Gamma Chi.

>    **Answer:**    **Admitted.**

19.    Upon information and belief, Alexandria Clemons is a resident and citizen of Illinois.

>    **Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about the**
>    **truth of the allegations in paragraph 19.**

20.    Upon information and belief, Alexandria Clemons is a resident and citizen of California.

>    **Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about the**
>    **truth of the allegations in paragraph 20.**

21.    Cariana Chambers was a student at Northwestern University and a member of
Gamma Chi.

>    **Answer:**    **Admitted.**

22.    Upon information and belief, Cariana Chambers is a resident and citizen of the
Virginia.

>    **Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about the**
>    **truth of the allegations in paragraph 22.**

23.    Raven Smith was a student at Northwestern University and initiated into Gamma Chi.

**Answer:** **Admitted.**

24.   Raven Smith became a member of Chi Omega Omega, a graduate chapter of AKA Sorority in Chicago, Illinois, after graduating from Northwestern University.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24.**

25.   Raven Smith is a resident and citizen of Illinois.

**Answer: Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25.**

26.   Bianca Valdez was a student at Northwestern University and initiated into Gamma Chi.

**Answer:** **Admitted.**

27.   Bianca Valdez became a general member of AKA Sorority after graduating from Northwestern University. A general member of AKA Sorority is a member who is financially active with the sorority but not affiliated with or active with a specific chapter.

**Answer: Admitted.**

28.   Bianca Valdez is a resident and citizen of Illinois.

**Answer: Admitted.**

29.   Ava Thompson Greenwell served as the graduate advisor to Gamma Chi in 2015, 2016, and 2017 and was a member of Delta Chi Omega.

**Answer:** **Valdez admits Ava Thompson Greenwell served as a graduate advisor but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 29**

30.   Ava Thompson Greenwell is a resident and citizen of Illinois.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30.**

31.   Ashanti Madlock-Henderson served as the assistant graduate advisor to Gamma Chi in

5

2016 and 2017 and was a member of Delta Chi Omega.

**Answer:** **Valdez admits Ashanti Madlock-Henderson served as an assistant**

**graduate advisor but lacks knowledge or information sufficient to form a belief about the**

**truth of the allegations in paragraph 31.**

32.     Ashanti Madlock- Henderson is a resident and citizen of Illinois.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the**

**truth of the allegations in paragraph 32.**

33.     Felicia Hankins brings her Complaint under federal diversity jurisdiction, 28 U.S.C. §

1332, as the parties are completely diverse in citizenship and the amount in controversy far exceeds

$75,000.

**Answer:** **Valdez admits this action is brought under a claim of diversity jurisdiction**

**but lacks knowledge or information sufficient to form a belief about the truth of the**

**remaining allegations in paragraph 33.**

34.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b).

Defendants AKA Sorority, Delta Chi Omega, Gamma Chi, Kathy A. Walker Steele, Alexandria

Anderson, Alexandria Clemons, Raven Smith, Bianca Valdez, Ava Thompson Greenwell, and Ashanti

Madlock-Henderson reside and maintain citizenship in the state of Illinois. A corporation is deemed to

reside in any judicial district where its contact would be sufficient to subject it to personal jurisdiction at

the time the action is commenced. Defendants AKA Sorority, Delta Chi Omega, Gamma Chi, Alexandria

Anderson, Alexandria Clemons, Raven Smith, Bianca Valdez, Ava Thompson Greenwell, and Ashanti

Madlock-Henderson had a presence in Cook County, Illinois, at all times relevant including the day this

action is commenced, within the boundaries of the United States District Court for the Northern District

of Illinois, Eastern Division. A substantial part—if not all—of the events and omissions giving rise to

this claim occurred in this judicial district.

**Answer:** **Valdez admits a substantial part, if not all, of the events and omissions**

**described in this Amended Complaint occurred in this judicial district but lacks**

**knowledge or information sufficient to form a belief about the truth of the remaining**

**allegations in paragraph 34.**

## FACTUAL BACKGROUND

### *History of Hazing within Alpha Kappa Alpha Sorority, Incorporated*

35.     AKA Sorority is a sorority with nearly 300,000 members worldwide (75,000

financially active), and 1,018 chapters in 47 U.S. States and 1 U.S.Territory.

> **Answer:     Valdez admits AKA Sorority is a sorority but lacks knowledge or**
>
> **information sufficient to form a belief about the truth of the remaining allegations in**
>
> **paragraph 35.**

36.     Members of the sorority can be initiated in an undergraduate or graduate chapter.

Membership in AKA Sorority is by invitation only.

> **Answer:     Admitted.**

37.     If you are matriculating as a full-time student attending an accredited four-year college

or university, membership into AKA Sorority is obtained through an undergraduate chapter.

> **Answer:     Valdez lacks knowledge or information sufficient to form a belief about the**
>
> **truth of the allegations in paragraph 37.**

38.     All undergraduate chapters of AKA Sorority are supervised by a graduate chapter.

> **Answer:     Valdez lacks knowledge or information sufficient to form a belief about the**
>
> **truth of the allegations in paragraph 38.**

39.     Alpha Kappa Alpha has prohibited hazing since the organization was founded in 1908. In

1999, Alpha Kappa Alpha Sorority reaffirmed its total opposition to hazing with a tougher anti-hazing

policy.

> **Answer:     Valdez lacks knowledge or information sufficient to form a belief about the**
>
> **truth of the allegations in paragraph 39.**

40.     AKA Sorority defines hazing as acts that include but are not limited to: (1) Physical acts,

such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s); (2) behavior which is directed against any individual(s) for the purpose of causing shame, abuse, insult, humiliation, intimidation or disgrace; and (3) a variety of prohibited practices including, but not limited to, "underground hazing," "financial hazing," "pre-pledging," "post-pledging" or "post-initiation pledging."

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40.**

41.     Despite this tougher anti-hazing policy being instituted by AKA Sorority, hazing continues to be a well-known occurrence in the sorority, and women continued to sustain injuries and even death as a result of hazing rituals.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41.**

42.     In 2002, three years after AKA Sorority instituted its tougher anti-hazing policies, AKA Sorority was named as a defendant in a lawsuit in California where it was alleged that two women drowned after being lead into the ocean blind folded wearing sweatpants and tennis shoes as part of a hazing ritual in order to gain membership in AKA Sorority.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 42.**

43.     Following the deaths of the women, their families alleged their deaths were the result of a hazing ritual associated with AKA Sorority. Shortly after that in 2002, Alpha Kappa Alpha placed a moratorium on inducting undergraduate women for approximately a year.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43.**

44.     AKA Sorority's hazing culture has continued over the past decade.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the**

truth of the allegations in paragraph 44.

45.     In 2013, Lauren Cofield and Lauren Comptin filed a lawsuit in Washington

D.C. against AKA Sorority alleging hazing by sorority members.

> **Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45.**

46.     In February 2018, a dozen AKA Sorority pledges at the University of Pittsburgh

notified the police of hazing allegations.

> **Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 46.**

47.     The allegations included that the women were paddled, punched, kicked, slapped, and

forced to eat rotten food.

> **Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 47.**

48.     AKA Sorority is currently suspended at the University of Pittsburg until spring 2028.

> **Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 48.**

49.     In April 2018, the Alpha Beta Chapter of Alpha Kappa Alpha Sorority, Incorporated,

located at Fort Valley State University in Georgia, was accused of running a sex ring to pay for the

initiation of new members. The graduate adviser was accused of having a role in the sex ring.

> **Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 49.**

50.     It was alleged that women seeking membership in Alpha Beta were a part of a

prostitution ring at the direction of members of AKA Sorority, including the faculty advisor of Alpha

Beta, to raise money for pledge fees.

> **Answer:        Valdez lacks knowledge or information sufficient to form a belief about the**

**truth of the allegations in paragraph 50.**

51.     AKA Sorority's national office opened an investigation to look into "unauthorized activities and misconduct involving current and former members" related to the sex ring at Alpha Beta Chapter.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 51.**

### History of Hazing within Gamma Chi

52.     Gamma Chi has a history of hazing woman before they are initiated into the sorority (pre-pledging) or after women are initiated into the sorority (post- pledging/post-initiation pledging).

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52.**

53.     In January 2016, Defendant Cariana Chambers and Kayla Famurewa, both members of Gamma Chi at the time, were suspended from AKA Sorority for violating the sorority's hazing policy.

**Answer:     Valdez admits Cariana Chambers and Kayla Famurewa were suspended from the sorority in 2016 but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 53.**

54.     The hazing involved pre-pledging women who were not members of the sorority, but were seeking membership.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54.**

55.     The hazing included physical and mental abuse of the women seeking membership. Examples of such hazing included, but were not limited to, abusive physical contact, verbal abuse, and financial exploitation.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 55.**

56. The women who were found in violation of the AKA Sorority hazing policy who were not members of the sorority were punished by not being considered for membership in the sorority in the fall of 2015 and spring of 2016.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56.**

### *Hazing of Jordan Hankins*

57. In October 2016, Jordan Hankins attended a "rush" event hosted by Gamma Chi, under the direction of Delta Chi Omega.

**Answer:** **Valdez admits Jordan Hankins attended a "rush" event hosted by Gamma Chi in October, 2016, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 57.**

58. The "rush" event was authorized by the Central Regional Director of Alpha Kappa Alpha Sorority, Inc. and the international office of Alpha Kappa Alpha Sorority, Incorporated.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 58.**

59. On October 10, 2016, Defendant Ava Thompson Greenwell sent Jordan Hankins an e-mail advising she was "cleared to move to the next stage of the Alpha Kappa Alpha Sorority, Inc. membership process."

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 59.**

60. Between October 10, 2016, and November 20, 2016, Jordan Hankins, and ten additional women, known as line sisters, completed the Membership Intake Process.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 60.**

61. Some of Jordan Hankins' line sisters were women who had been prevented from

joining the sorority before November 2016 because of violations of the sorority's hazing policy.

**Answer:** **Valdez admits some of the line sisters had been prevented from joining the sorority before November, 2016, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 61.**

62.    Some of the line sisters had been subject to hazing from other members of Gamma Chi in the past, including Defendants Cariana Chambers, Raven Smith, and Bianca Valdez.

**Answer:** **Valdez denies she had subjected any line sisters to hazing but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 62.**

63.    On November 20, 2016, Jordan Hankins and her line sisters performed a campus introduction show, sometimes referred to as a probate show, at McCormick Tribune Center Forum on Northwestern's campus.

**Answer:** **Admitted.**

64.    Following the probate show, Jordan Hankins was advised by members of AKA Sorority that as a condition of membership to be accepted she must agree to a post-initiation pledge process.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 64.**

65.    Jordan Hankins began to post-pledge with some of her line sisters she participated in Membership Intake Process with shortly after the probate show on November 20, 2016.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 65.**

66.    As part of the pledging process, Hankins was subjected to several instances of severe hazing.

**Answer:** **Denied.**

67.    While post-initiation pledging, Jordan Hankins was subjected to physical abuse

including paddling, verbal abuse, mental abuse, financial exploitation, sleep deprivation, items being

thrown and dumped on her, and other forms of hazing intended to humiliate and demean her.

> **Answer:     Denied.**

68.    These incidents negatively affected Jordan Hankins' physical, mental, and emotional

health.

> **Answer:     Denied.**

69.    Jordan Hankins communicated to members of AKA Sorority, including individually

named defendants, that the hazing was triggering her PTSD, causing severe anxiety and depression

and that she was having suicidal thoughts.

> **Answer:     Denied; further answering, Valdez admits that Jordan Hankins stated she**
> **was upset by some of the sorority activities and that all activities immediately stopped,**
> **but Valdez lacks knowledge or information sufficient to form a belief about the truth of**
> **the remaining allegations in paragraph 69.**

70.    Eventually the hazing got the best of Jordan Hankins and on January 9, 2017, Jordan

Hankins was found hanging in her dorm room. First responders were called, and she was pronounced

dead when first responders arrived.

> **Answer:     Valdez admits Jordan Hankins committed suicide on January 9, 2017 but**
> **lacks knowledge or information sufficient to form a belief about the truth of the**
> **remaining allegations in paragraph 70.**

<div align="center">

**COUNT I**
**Negligent Supervision as to Defendant Alpha Kappa Alpha**
**Sorority, Incorporated**
**(Wrongful Death Claim)**

</div>

**Counts I through X are not directed to Bianca Valdez, but the allegations in these counts are**

**incorporated in those counts directed against her -- Counts XIV, XV and XVI -- and she there**

**provides these answers.**

71.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

<div align="center">13</div>

**Answer:** **Valdez restates and reaffirms her answers to paragraphs 1 through 70, inclusive, as if fully set out here.**

72. Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of physical and mental injury including such mental injury that would lead to suicide associated with hazing.

**Answer:** **Paragraph 71 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 72.**

73. AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 73.**

74. AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process. This is why membership is by invitation only.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 74.**

75. No AKA Sorority chapter has sole authority to initiate members into the sorority.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 75.**

76. AKA Sorority has the sole authority to determine whether an individual can obtain membership in the sorority.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 76.**

14

77.     AKA sorority grants authority to chapters to act as agents of the national organization to conduct sorority business and Membership Intake Process.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 77.**

78.     With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 78.**

79.     For undergraduate chapters, in addition to serving as an agent for AKA Sorority, a graduate chapter must also serve as an agent of AKA Sorority to supervise the undergraduate chapter.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79.**

80.     Only with authority from AKA Sorority and a graduate chapter acting as an agent and supervisor for AKA Sorority can an undergraduate chapter conduct a Membership Selection Process or other sorority business.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 80.**

81.     AKA Sorority oversees and supervises all undergraduate membership intake while the Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 81.**

82.     Defendant AKA Sorority, by and through its agents, employees, and proxies, were negligent in allowing Hankins to be hazed. Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

15

(a) Permitting and allowing harmful initiation rituals which included physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and other forms of hazing by local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega;

(b) Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega, about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c) Failing to adopt reasonable and effective policies to be followed by its local chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful initiation rituals and hazing;

(d) Failing to take reasonable steps to insure its local chapters, including Gamma Chi and Delta Chi Omega, followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e) Failing to take reasonable steps to learn whether its local chapters, including Gamma Chi and Delta Chi Omega, were following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f) Failing to train members of Gamma Chi and Delta Chi Omega on the anti-hazing policy; and

(g) Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

**Answer: Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 82, including subparagraphs (a) through (g) inclusive.**

83. It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendant AKA Sorority and its agents were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer: Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 83.**

84. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

**Answer: Valdez lacks knowledge or information sufficient to form a belief about the**

**truth of the allegations in paragraph 84.**

85.     Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**Answer:        Valdez admits this count is brought under the Illinois Wrongful Death Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 85.**

### COUNT II
### Negligent Supervision as to Defendant AKA Sorority (Survival Claim)

86.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**Answer:        Valdez restates and reaffirms her answers to paragraphs 1 through 85, inclusive, as if fully set out here.**

87.     Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of physical and mental injury, including such mental injury that would lead to suicide associated with hazing.

**Answer:        Paragraph 86 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 87.**

88.     AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 88.**

89.     AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 89.**

90.     No AKA Sorority chapter has sole authority to initiate members into the sorority.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 90.**

91.     AKA sorority has the sole authority to determine whether an individual can obtain membership in the sorority.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 91.**

92.     With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 92.**

93.     Only with authority from AKA Sorority and a graduate chapter acting as an agent and supervisor for AKA Sorority can an undergraduate chapter conduct a Membership Selection Process or other sorority business.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 93.**

94.     For undergraduate chapters, the graduate chapter supervising the undergraduate chapter, and with authority from AKA Sorority, can then conduct a Membership Selection Process.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 94.**

95.     AKA Sorority oversees and supervises all undergraduate membership intake while the

Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 95.**

96.     Defendant AKA Sorority, by and through its agents, employees and proxies, were negligent in allowing Hankins to be hazed. Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

(a)     Permitting and allowing harmful initiation rituals which included physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and other forms of hazing by local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega;

(b)     Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega, about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c)     Failing to adopt reasonable and effective policies to be followed by its local chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful initiation rituals and hazing;

(d)     Failing to take reasonable steps to insure its local chapters, including Gamma Chi and Delta Chi Omega, followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)     Failing to take reasonable steps to learn whether its local chapters, including Gamma Chi and Delta Chi Omega, were following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)     Failing to train members of Gamma Chi and Delta Chi Omega on the anti-hazing policy; and

(g)     Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 96, including subparagraphs (a) through (g) inclusive.**

97.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendant AKA Sorority and its agents were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was

19

suicidal and had a plan to commit suicide.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 97.**

98.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98.**

99.     Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

> **Answer:** **Valdez admits this count is brought under the Illinois Survival Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 99.**

## COUNT III
### Negligent Supervision as to Defendant Delta Chi Omega and Defendant Kathy Walker Steele
### (Wrongful Death Claim)

100.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

> **ANSWER:** **Valdez restates and reaffirms her answers to paragraphs 1 through 99, inclusive, as if fully set out here.**

101.     Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele owed Hankins a duty to use ordinary care in supervising the initiation rituals of Gamma Chi to reduce the risks of physical and mental injury, including such mental injury that would lead to suicide associated with hazing.

> **Answer:** **Paragraph 101 sets out a legal conclusion to which no response is required,**

20

**but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 101.**

102.     Delta Chi Omega and Central Regional Director Kathy Walker Steele acted as agents and at the direction of AKA Sorority to implement and enforce AKA Sorority's anti-hazing policy.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 102.**

103.     AKA Sorority outlined in detail the internationally mandated Membership Intake Process and anti-hazing policy. Central Regional Director Kathy Walker Steele and Delta Chi Omega were to implement those internationally mandated processes and policies and enforce them when supervising Gamma Chi in the Membership Intake Process and members post-initiation.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 103.**

104.     Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele, by and through their agents, employees and proxies, were negligent in allowing Hankins to be hazed. Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

(a)     Permitting and allowing harmful initiation rituals and hazing by Gamma Chi, which required physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping;

(b)     Failing to warn Gamma Chi members and Hankins about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c)     Failing to adopt reasonable and effective policies to be followed by Gamma Chi to prevent harmful initiation rituals and hazing;

(d)     Failing to take reasonable steps to insure Gamma Chi followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)     Failing to take reasonable steps to learn whether Gamma Chi was following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)     Failing to train and supervise chapter advisors.

Defendants were negligent in other respects.

21

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 104, including subparagraphs (a) through (f) inclusive.**

105.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Walker Steele and Delta Chi Omega were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 105.**

106.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 106.**

107.     Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**Answer:** **Valdez admits this count is brought under the Illinois Wrongful Death Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 107.**

**COUNT IV**
**Negligent Supervision as to Defendant Delta Chi Omega and Central**
**Regional Director Kathy Walker Steele**
**(Survival Claim)**

108.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:** **Valdez restates and reaffirms her answers to paragraphs 1 through**

22

107, inclusive, as if fully set out here.

109.     Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele owed

Hankins a duty to use ordinary care in supervising the initiation rituals of Gamma Chi to reduce the risks

of physical and mental injury including such mental injury that would lead to suicide associated with

hazing.

**Answer:     Paragraph 109 sets out a legal conclusion to which no response is required,**

**but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient**

**to form a belief about the truth of the allegations in paragraph 108.**

110.     Delta Chi Omega and Central Regional Director Kathy Walker Steele acted as

agents and at the direction of AKA Sorority to implement and enforce AKA Sorority's anti-hazing

policy.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about**

**the truth of the allegations in paragraph 110.**

111.     AKA Sorority outlined in detail the internationally mandated Membership Intake

Process and anti-hazing policy. Central Regional Director Kathy Walker Steele and Delta Chi Omega

were to implement those internationally mandated processes and policies and enforce them when

supervising Gamma Chi in the Membership Intake Process and members post initiation.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the**

**truth of the allegations in paragraph 111.**

112.     Defendants Delta Chi Omega and Central Regional Director Kathy Walker Steele, by and

through their agents, employees and proxies, were negligent in allowing Hankins to be hazed.

Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

(a)     Permitting and allowing harmful initiation rituals and hazing by Gamma Chi,
which required physical abuse, mental abuse, financial exploitation, sleep
deprivation, kidnapping;

(b)     Failing to warn Gamma Chi members and Hankins about the dangers and
harmful effects of initiation rituals and hazing causing physical injury, mental
anguish, humiliation and embarrassment, although it knew or should have

23

known such rituals and acts can cause severe depression and/or be fatal;

(c)     Failing to adopt reasonable and effective policies to be followed by Gamma Chi to prevent harmful initiation rituals and hazing;

(d)     Failing to take reasonable steps to insure Gamma Chi followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)     Failing to take reasonable steps to learn whether Gamma Chi was following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)     Failing to train and supervise chapter advisors.

Defendants were negligent in other respects.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 112, including subparagraphs (a) through (f) inclusive.**

113.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Walker Steele and Delta Chi Omega were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 113.**

114.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 114.**

115.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

**Answer:        Valdez admits this count is brought under the Illinois Survival Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining**

24

allegations in paragraph 115.

## COUNT V
### Negligent Entrustment as to Defendant AKA Sorority (Wrongful Death Claim)

116.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:    Valdez restates and reaffirms her answers to paragraphs 1 through 115, inclusive, as if fully set out here.**

117.    Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of physical and mental injury including such mental injury that would lead to suicide associated with hazing.

**Answer:    Paragraph 117 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 117.**

118.    AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 118.**

119.    AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 119.**

120.    No AKA Sorority chapter has sole authority to initiate members into the sorority.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 120.**

121.    AKA Sorority has the sole authority to determine whether an individual can obtain

membership in the sorority.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 121.**

122.    AKA sorority grants authority to chapters to act as agents of the national organization to conduct sorority business and Membership Intake Process.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 122.**

123.    With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 123.**

124.    For undergraduate chapters, in addition to serving as an agent for AKA Sorority, a graduate chapter must also serve as an agent of AKA Sorority to supervise the undergraduate chapter.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 124.**

125.    Only with authority from AKA Sorority and a graduate chapter acting as an agent for AKA Sorority and supervisor can an undergraduate chapter conduct a Membership Intake Process or other sorority business.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 125.**

126.    AKA Sorority oversees and supervises all undergraduate membership intake while the Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 126.**

127.     Defendant AKA Sorority, by and through its agents, employees, and proxies, were

negligent in entrusting Delta Chi Omega and Gamma Chi to conduct a Membership Intake Process in

October through November 2016. Illustrations of said negligence or omissions, cited by way of

example but not limitation, are as follows:

(a)     Permitting and allowing harmful initiation rituals which included physical
abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and
other forms of hazing by local Alpha Kappa Alpha chapters, including Gamma
Chi and Delta Chi Omega;

(b)     Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and
Delta Chi Omega, about the dangers and harmful effects of initiation rituals and
hazing causing physical injury, mental anguish, humiliation and embarrassment,
although it knew or should have known such rituals and acts can cause severe
depression and/or be fatal;

(c)     Failing to adopt reasonable and effective policies to be followed by its local
chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful
initiation rituals and hazing;

(d)     Failing to take reasonable steps to insure its local chapters, including Gamma
Chi and Delta Chi Omega, followed policies and procedures it claims to have
adopted regarding initiation rituals and hazing;

(e)     Failing to take reasonable steps to learn whether its local chapters, including
Gamma Chi and Delta Chi Omega, were following policies and procedures
regarding required initiation rituals or hazing activities it claimed to have
adopted;

(f)     Failing to train members of Gamma Chi and Delta Chi Omega on the anti-
hazing policy; and

(g)     Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the**

**truth of the allegations in paragraph 127, including subparagraphs (a) through (g) inclusive.**

128.     AKA Sorority knew or should have known that members of Gamma Chi were recently

suspended for violations of the anti-hazing policy and there was a dangerous propensity of Gamma Chi

members to continue to engage in hazing.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the**

**truth of the allegations in paragraph 128.**

129.     As a direct and proximate result of one or more of the foregoing negligent acts or

omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to

suffer severe anxiety and depression and commit suicide.

>**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 129.**

130. Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

>**Answer:** **Valdez admits this count is brought under the Illinois Wrongful Death Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 130.**

## COUNT VI
### Negligent Entrustment as to Defendant AKA Sorority (Survival Claim)

131. Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

>**ANSWER:** **Valdez restates and reaffirms her answers to paragraphs 1 through 130, inclusive, as if fully set out here.**

132. Defendant AKA Sorority owed Hankins a duty to use ordinary care in supervising the initiation rituals of its chapters, including Gamma Chi, to reduce the risks of physical and mental injury including such mental injury that would lead to suicide associated with hazing.

>**Answer:** **Paragraph 132 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 132.**

133. AKA Sorority is responsible for instituting and enforcing policies that provide adequate supervision of new and potential members from acts of hazing.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 133.**

134.    AKA Sorority is solely responsible for all membership selection and permitting chapters to participate in the Membership Intake Process.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 134.**

135.    No AKA Sorority chapter has sole authority to initiate members into the sorority.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 135.**

136.    AKA Sorority has the sole authority to determine whether an individual can obtain membership in the sorority.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 136.**

137.    AKA sorority grants authority to chapters to act as agents of the national organization to conduct sorority business and Membership Intake Process.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 137.**

138.    With authority from AKA Sorority, the Regional Director then informs all chapters in her region when the chapter has permission from AKA Sorority to conduct a Membership Intake Process.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 138.**

139.    For undergraduate chapters, in addition to serving as an agent for AKA Sorority, a graduate chapter must also serve as an agent of AKA Sorority to supervise the undergraduate chapter.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 139.**

140.     Only with authority from AKA Sorority and a graduate chapter acting as an agent for AKA Sorority as a supervisor can an undergraduate chapter conduct a Membership Intake Process or other sorority business.

**Answer:       Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 140.**

141.     AKA Sorority oversees and supervises all undergraduate membership intake while the Regional Director and Graduate Chapters serve as agents and acts on behalf of AKA Sorority as supervisors and at the direction of AKA Sorority to institute the sorority's policies and procedures.

**Answer:       Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 141.**

142.     Defendant AKA Sorority, by and through its agents, employees and proxies, were negligent in entrusting Delta Chi Omega and Gamma Chi to conduct a Membership Intake Process in October through November 2016. Illustrations of said negligence or omissions, cited by way of example but not limitation, are as follows:

(a)     Permitting and allowing harmful initiation rituals which included physical abuse, mental abuse, financial exploitation, sleep deprivation, kidnapping, and other forms of hazing by local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega;

(b)     Failing to warn local Alpha Kappa Alpha chapters, including Gamma Chi and Delta Chi Omega, about the dangers and harmful effects of initiation rituals and hazing causing physical injury, mental anguish, humiliation and embarrassment, although it knew or should have known such rituals and acts can cause severe depression and/or be fatal;

(c)     Failing to adopt reasonable and effective policies to be followed by its local chapters, including Gamma Chi and Delta Chi Omega, to prevent harmful initiation rituals and hazing;

(d)     Failing to take reasonable steps to insure its local chapters, including Gamma Chi and Delta Chi Omega, followed policies and procedures it claims to have adopted regarding initiation rituals and hazing;

(e)     Failing to take reasonable steps to learn whether its local chapters, including Gamma Chi and Delta Chi Omega, were following policies and procedures regarding required initiation rituals or hazing activities it claimed to have adopted;

(f)     Failing to train members of Gamma Chi and Delta Chi Omega on the anti-hazing policy; and

(g)     Failing to train and supervise chapter advisors.

Defendant was negligent in other respects.

**Answer:      Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 142, including subparagraphs (a) through (g) inclusive.**

143.    AKA Sorority knew or should have known that members of Gamma Chi were recently suspended for violations of the anti-hazing policy and there was a dangerous propensity of Gamma Chi members to continue to engage in hazing.

**Answer:      Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 143.**

144.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected to hazing, including physical and mental harm, which caused her to suffer severe anxiety and depression and commit suicide.

**Answer:      Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 144.**

145.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

**Answer:      Valdez admits this count is brought under the Illinois Survival Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 145.**

## COUNT VII
### Negligence as to Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi (Wrongful Death Claim)

146.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:    Valdez restates and reaffirms her answers to paragraphs 1 through 144, inclusive, as if fully set out here.**

31

147.    At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendant Central Regional Director Kathy Walker Steele, Defendant Delta Chi Omega, Defendant Gamma Chi, and its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock- Henderson.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 147.**

148.    AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only. No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 148.**

149.    Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega, and Gamma Chi, act as agents to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 149.**

150.    AKA Sorority maintains full control of creating the sororities membership code of conduct, member discipline such as suspension and expulsion is determined by the national sorority, and local chapters have to get authority for membership activities from AKA Sorority. AKA Sorority holds out each local graduate and undergraduate chapter, including but not limited to, Delta Chi Omega and Gamma Chi, and their duly appointed or elected officers and members, as its agents with authority to act on its behalf.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief**

**about the truth of the allegations in paragraph 150.**

151.    At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 151.**

152.    Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 152.**

153.    Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 153.**

154.    Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during initiation rituals to the foreseeable consequences of hazing, including severe depression and suicide.

**Answer:    Paragraph 154 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 154.**

155.    From June of 2015 to January 2017, Defendants, directly or through their agents, committed one or more of the following negligent acts and omissions:

(a)    Planned, promoted, and/or participated in initiation rituals, which included hazing Hankins;

(b)    Required prospective sorority members or pledges, including Hankins, to participate in initiation rituals that included hazing, as a condition of membership in the sorority;

(c)    Required newly initiated members to participate in post-initiation pledging and hazing as a condition of acceptance and full membership in the sorority; and

(d)    Failed to report hazing activities being conducted by sorority members.

Defendants were negligent in other respects.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 155, including subparagraphs (a) through (d) inclusive.**

156.    At all relevant times, all Defendants were acting within the scope of their agency relationship.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 156.**

157.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Walker Steele, Delta Chi Omega, and Gamma Chi were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 157.**

158.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

**Answer:        Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 158.**

159.     Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**Answer:     Valdez admits this count is brought under the Illinois Wrongful Death Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 159.**

### COUNT VIII
### Negligence as to Defendants AKA Sorority, Delta
### Chi Omega and Gamma Chi
### (Survival Claim)

160.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:     Valdez restates and reaffirms her answers to paragraphs 1 through 159, inclusive, as if fully set out here.**

161.     At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendants Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 161.**

162.     AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only. No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 162.**

163.    Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi act as agents to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

**Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 163.**

164.    AKA Sorority maintains full control of creating the sororities' membership code of conduct, member discipline such as suspension and expulsion is determined by the national sorority, and local chapters have to get authority for membership activities from AKA Sorority.

**Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 164.**

165.    At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

**Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 165.**

166.    Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

**Answer:**    **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 166.**

167.    Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

36

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 167.**

168.     Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during initiation rituals to the foreseeable consequences of hazing, including depression and suicide.

> **Answer:** **Paragraph 168 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 168.**

169.     From June of 2015 to January 2017, Defendants, directly or through their agents, committed one or more of the following negligent acts and omissions:

> (a)     Planned, promoted, and/or participated in initiation rituals, which included hazing Hankins;
> (b)     Required prospective sorority members or pledges, including Hankins, to participate in initiation rituals that included hazing, as a condition of membership in the sorority;
> (c)     Required newly initiated members to participate in post-initiation pledging and hazing as a condition of acceptance and full membership in the sorority; and
> (d)     Failed to report hazing activities being conducted by sorority members.

Defendants were negligent in other respects.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 169, including subparagraphs (a) through (d) inclusive.**

170.     At all relevant times, all Defendants were acting within the scope of their agency relationship.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 170.**

171.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Walker Steele, Delta Chi Omega, and Gamma Chi were advised

that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 171.**

172. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 172.**

173. Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

> **Answer:** **Valdez admits this count is brought under the Illinois Survival Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 173.**

## COUNT IX
### Negligence as to Defendants AKA Sorority, Delta Chi Omega and Gamma Chi (Wrongful Death Claim)

174. Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

> **ANSWER:** **Valdez restates and reaffirms her answers to paragraphs 1 through 173, inclusive, as if fully set out here.**

175. At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendants Kathy Walker Steele, Delta Chi Omega, Gamma Chi and its agents and duly appointed or elected officers, members,

38

and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 175.**

176. AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only. No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 176.**

177. Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi act as agents to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 177.**

178. AKA Sorority maintains full control of member discipline, and local chapters have to get authority for membership activities from AKA Sorority. AKA Sorority holds out each local graduate and undergraduate chapter, including but not limited to, Delta Chi Omega and Gamma Chi, and their duly appointed or elected officers and members, as its agents with authority to act on its behalf.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 178.**

179. At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 179.**

180.    Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 180.**

181.    Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 181.**

182.    Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during initiation rituals to the foreseeable consequences of hazing, including depression and suicide.

**Answer:** **Paragraph 182 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 182.**

183.    At all relevant times, all Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, and Gamma Chi were acting within the scope of their agency relationship.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about**

the truth of the allegations in paragraph 183.

184.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

> **Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 184.**

185.     Defendants violated 720 ILCS 5/12C-50.

> **Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 185.**

186.     720 ILCS 5/12C-50 was designed to prevent injury to a class of persons to which Hankins belonged.

> **Answer:     Section 12C-50 speaks for itself, and therefore no answer is required for paragraph 186**.

187.     720 ILCS 5/12C-50 penalizes those requiring a student to perform an act for the purpose of induction into any group or organization when that act is not sanctioned by the educational institution and results in bodily harm.

> **Answer:     Section 12C-50 speaks for itself, and therefore no answer is required for paragraph 187.**

188.     Northwestern University did not sanction hazing.

> **Answer:     Admitted.**

189.     By hazing Hankins, Defendants, directly or through their agents or duly appointed or elected officers, members and pledges, violated 720 ILCS 5/12C-50. Illustrations of said violation, cited by way of example but not limitation, are as follows:

<div style="margin-left: 3em;">

(a)      Physical abuse;
(b)      Mental abuse;
(c)      Verbal abuse;
(d)      Sleep deprivation; and
(e)      Financial Exploitation.

</div>

Defendants violated the statute in other ways.

**Answer:     Valdez denies each and every allegation in paragraph 189.**

190.    Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**Answer:     Valdez admits this count is brought under the Illinois Wrongful Death Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 190.**

### COUNT X
### Negligence as to Defendants AKA Sorority, Delta Chi Omega and Gamma Chi (Survival Claim)

191.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:     Valdez restates and reaffirms her answers to paragraphs 1 through 190, inclusive, as if fully set out here.**

192.    At all material times, Defendant AKA Sorority was accountable and responsible as a principal for the acts and conduct of its agents, including but not limited to, Defendants Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

**Answer:     Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 192.**

193.    AKA Sorority has the sole discretion to initiate members into the sorority. Membership is by invitation only. No chapter of AKA Sorority can initiate new members without approval from AKA Sorority national headquarters.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 193.**

194.    Regional directors and local chapters, including but not limited to, Central Regional Director Kathy Walker Steele, Delta Chi Omega and Gamma Chi act as agents to carry out AKA Sorority's mandated programs, initiatives, and Membership Intake Process.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 194.**

195.    AKA Sorority maintains full control of member discipline, and local chapters have to get authority for membership activities from AKA Sorority. AKA Sorority holds out each local graduate and undergraduate chapter, including but not limited to, Delta Chi Omega and Gamma Chi, and their duly appointed or elected officers and members, as its agents with authority to act on its behalf.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 195.**

196.    At all material times, Defendants Delta Chi Omega and Gamma Chi were accountable and responsible as a principal for the acts and conduct of its agents and duly appointed or elected officers, members, and pledges, including but not limited to, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson.

**Answer:    Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 196.**

197.    Shortly after November 20, 2016, Jordan Hankins was required by members of AKA Sorority, Delta Chi Omega, and Gamma Chi, including but not limited to, Defendants Anderson, Brown,

Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, to participate in an initiation ritual and hazing as a condition to being accepted for membership in AKA Sorority.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 197.**

198. Members of AKA Sorority, Delta Chi Omega, and Gamma Chi were acting within their scope as agents, officers, and members of AKA Sorority when requiring Jordan Hankins to participate in an initiation ritual and hazing as a condition of being accepted for membership in AKA Sorority.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 198.**

199. Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi, and its agents and duly appointed or elected officers, members and agents owed Hankins a duty of reasonable care not to subject her during initiation rituals to the foreseeable consequences of hazing, including depression and suicide.

> **Answer:** **Paragraph 199 sets out a legal conclusion to which no response is required, but to the extent an answer is necessary, Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 199.**

200. At all relevant times, all Defendants were acting within the scope of their agency relationship.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 200.**

201. It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants AKA Sorority, Central Regional Director Kathy Walker Steele, Delta Chi Omega, Gamma Chi were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 201.**

202. Defendants violated 720 ILCS 5/12C-50.

**Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 202.**

203. 720 ILCS 5/12C-50 was designed to prevent injury to a class of persons to which Hankins belonged.

**Answer:** **Section 12C-50 speaks for itself, and therefore no answer is required for paragraph 203.**

204. 720 ILCS 5/12C-50 penalizes those requiring a student to perform an act for the purpose of induction into any group or organization when that act is not sanctioned by the educational institution and results in bodily harm.

**Answer:** **Section 12C-50 speaks for itself, and therefore no answer is required for paragraph 204.**

205. Northwestern University did not sanction hazing.

**Answer:** **Admitted.**

206. By hazing Hankins, Defendants, directly or through their agents or duly appointed or elected officers, members and pledges, violated 720 ILCS 5/12C-50. Illustrations of said violation, cited by way of example but not limitation, are as follows:

      (a)     Physical abuse;
      (b)     Mental abuse;
      (c)     Verbal abuse;
      (d)     Sleep deprivation; and
      (e)     Financial Exploitation.

Defendants violated the statute in other ways.

**Answer:** **Valdez denies each and every allegation in paragraph 206.**

207. At all relevant times, all Defendants were acting within the scope of their agency

relationship.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 207.**

208.   As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

> **Answer:** **Valdez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 208.**

209.   Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

> **Answer:** **Valdez admits this count is brought under the Illinois Survival Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 209.**

### COUNT XI
### Negligence as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson
### (Wrongful Death Claim)

210.   At all material times, Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson owed a duty of reasonable care not to subject Jordan Hankins to the foreseeable consequences of required hazing during initiation rituals.

> **Answer:** **Valdez denies she owed any duty to Jordan Hankins other than that imposed by law and denies the allegations in this Amended Complaint create circumstances under which Valdez would owe such a duty. Further answering, Paragraph 210 sets out a legal conclusion to which no response is required.**

211.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson acting knowingly and willingly in execution of post-initiation pledging, planned, approved, promoted, required, and participated in, jointly and in concert, committed one or more of the following negligent acts and omissions:

    (a)    Planned and promoted multiple hazing activities, in which Gamma Chi initiates, including Jordan Hankins, as a condition to membership in the sorority, had to be subjected to various forms of hazing including physical abuse, mental abuse, verbal abuse, financial exploitation, and sleep deprivation;

    (b)    Required Jordan Hankins, as a condition to membership in the sorority, to call sorority members at specific times to be subjected to verbal abuse;

    (c)    Required Jordan Hankins, as a condition to membership in the sorority, to subject herself to physical abuse;

    (d)    Failed to seek medical attention for Jordan Hankins when she advised she was "mentally unstable" and having suicidal thoughts;

    (e)    Failed to report the hazing activities to agents, officers, and/or members of AKA Sorority; and

    (f)    Were otherwise careless and negligent.

**Answer:**    **Valdez denies each and every allegation in paragraph 211, including subparagraphs (a) through (f), inclusive.**

212.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:**    **Valdez denies each and every allegation in paragraph 212.**

213.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

**Answer:**    **Valdez denies each and every allegation in paragraph 213.**

214.     Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal

Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed

substantial pecuniary damages including loss of her society and support, grief, and lost wages and

salary.

**Answer:** **Valdez admits this count is brought under the Illinois Wrongful Death Act,**

**lacks knowledge or information sufficient to form a belief about the truth of the**

**allegations concerning the personal representative and denies the remaining allegations**

**in paragraph 214.**

### COUNT XII
### Negligence as to Defendants Anderson, Brown, Clemons, Chambers, Smith,
### Valdez, Thompson Greenwell, and Madlock-Henderson
### (Survival Claim)

215.    At all material times, Defendants Anderson, Brown, Clemons, Chambers, Smith,

Valdez, Thompson Greenwell, and Madlock-Henderson owed a duty of reasonable care not to subject

Jordan Hankins to the foreseeable consequences of required hazing during initiation rituals.

**Answer:** **Valdez denies she owed any duty to Jordan Hankins other than that**

**imposed by law and denies the allegations in this Amended Complaint assert**

**circumstances under which Valdez would owe such a duty.  Further answering,**

**Paragraph 215 sets out a legal conclusion to which no response is required.**

216.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson

Greenwell, and Madlock-Henderson acting knowingly and willingly in execution of post-initiation

pledging, planned, approved, promoted, required, and participated in, jointly and in concert, committed

one or more of the following negligent acts and omissions:

(a)    Planned and promoted multiple hazing activities, in which Gamma Chi initiates,
including Jordan Hankins, as a condition to membership in the sorority, had to
be subjected to various forms of hazing including physical abuse, mental abuse,
verbal abuse, financial exploitation, and sleep deprivation;

(b)    Required Jordan Hankins, as a condition to membership in the sorority, to call
sorority members at specific times to be subjected to verbal abuse;

(c)    Required Jordan Hankins, as a condition to membership in the sorority, to
subject herself to physical abuse;

(d)    Failed to seek medical attention for Jordan Hankins when she advised she was

"mentally unstable" and having suicidal thoughts;

(e)     Failed to report the hazing activities to agents, officers, and/or members of AKA Sorority; and

(f)     Were otherwise careless and negligent.

**Answer:        Valdez denies each and every allegation in paragraph 216, including subparagraphs (a) through (f), inclusive.**

217.     It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:        Valdez denies each and every allegation in paragraph 217.**

218.     As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

**Answer:        Valdez denies each and every allegation in paragraph 218.**

219.     Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

**Answer:        Valdez admits this count is brought under the Illinois Survival Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 219.**

### COUNT XIII
**Intentional Infliction of Emotional Distress as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson (Wrongful Death Claim)**

220.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:    Valdez restates and reaffirms her answers to paragraphs 1 through 219, inclusive, as if fully set out here.**

221.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care to protect Hankins from the dangers of hazing.

**Answer:    Valdez denies she owed any duty to Jordan Hankins other than that imposed by law and denies the allegations in this Amended Complaint assert circumstances under which Valdez would owe such a duty.  Further answering, Paragraph 221 sets out a legal conclusion to which no response is required.**

222.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson intentionally hazed Hankins with the intention of inflicting severe emotion distress or knew there was a high probability that hazing would cause such distress. Illustrations of said conduct, cited by way of example but not limitation, are as follows:

(a)    Verbal abuse;
(b)    Physical abuse;
(c)    Emotional abuse;
(d)    Mental abuse; and
(e)    Financial exploitation.

**Answer:    Valdez denies each and every allegation in paragraph 222.**

223.    At all relevant times, Defendants knew or should have known the hazing activities were extreme, outrageous, and unlawful.

**Answer:    Valdez denies each and every allegation in paragraph 223.**

224.    Defendants' conduct was intentional and done with the purpose of causing Hankins to suffer humiliation, mental anguish, and emotional and physical distress.

**Answer:    Valdez denies each and every allegation in paragraph 224.**

225.    It was foreseeable that Hankins would commit suicide as a result of the hazing

activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

> **Answer:** **Valdez denies each and every allegation in paragraph 225.**

226.    As a direct and proximate result of one or more of the foregoing acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, verbal abuse, mental abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe emotional distress and ultimately commit suicide.

> **Answer:** **Valdez denies each and every allegation in paragraph 226.**

227.    Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

> **Answer:** **Valdez admits this count is brought under the Illinois Wrongful Death Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 227.**

### COUNT XIV
### Intentional Infliction of Emotional Distress as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson (Survival Claim)

228.    Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

> **Answer:** **Valdez restates and reaffirms her answers to paragraphs 1 through 227, inclusive, as if fully set out here.**

229.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care to protect Hankins from the

dangers of hazing.

> **Answer:** **Valdez denies she owed any duty to Jordan Hankins other than that imposed by law and denies the allegations in this Amended Complaint create circumstances under which Valdez would owe such a duty. Further answering, Paragraph 229 sets out a legal conclusion to which no response is required.**

230.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson intentionally hazed Hankins with the intention of inflicting severe emotion distress or knew there was a high probability that hazing would cause such distress. Illustrations of said conduct, cited by way of example but not limitation, are as follows:

(a)    Verbal abuse;
(b)    Physical abuse;
(c)    Emotional abuse;
(d)    Mental abuse; and
(e)    Financial exploitation.

**Answer:**    **Valdez denies each and every allegation in paragraph 230.**

231.    At all relevant times, Defendants knew the hazing activities were extreme, outrageous, and unlawful.

**Answer:**    **Valdez denies each and every allegation in paragraph 231.**

232.    Defendants' conduct was intentional and done with the purpose of causing Hankins to suffer humiliation, mental anguish, and emotional and physical distress.

**Answer:**    **Valdez denies each and every allegation in paragraph 232.**

233.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:**    **Valdez denies each and every allegation in paragraph 233.**

234.     As a direct and proximate result of one or more of the foregoing acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, verbal abuse, mental abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe emotional distress and ultimately commit suicide.

**Answer:**     **Valdez denies each and every allegation in paragraph 234.**

235.     Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

**Answer:**     **Valdez admits this count is brought under the Illinois Survival  Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 235.**

**COUNT XV**
**Negligent Infliction of Emotional Distress as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson (Wrongful Death Claim)**

236.     Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:**     **Valdez restates and reaffirms her answers to paragraphs 1 through 235, inclusive, as if fully set out here.**

237.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care to protect Hankins from the dangers of hazing.

**Answer:**     **Valdez denies she owed any duty to Jordan Hankins other than that imposed by law and denies the allegations in this Amended Complaint create circumstances under which Valdez would owe such a duty.  Further answering, Paragraph 237 sets out a legal conclusion to which no response is required.**

238.     Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson

Greenwell, and Madlock-Henderson were agents, members, officers, and pledges of AKA Sorority acting within their authority as such from June 2015 until January 2017.

**Answer:** **Valdez denies each and every allegation in paragraph 238.**

239. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, individually, and as agents, officers, and members of AKA Sorority, breached their duty of care when they hazed Hankins. Illustrations of said hazing, cited by way of example but not limitation, are as follows:

  (a)   Verbal abuse;
  (b)   Physical abuse;
  (c)   Emotional abuse;
  (d)   Mental abuse; and
  (e)   Financial exploitation.

**Answer:** **Valdez denies each and every allegation in paragraph 239.**

240. At all relevant times, Defendants knew or should have known of the risks of severe emotional distress, depression, and suicide arising from hazing.

**Answer:** **Valdez denies each and every allegation in paragraph 240.**

241. At all relevant times, all Defendants were acting within the scope of their agency relationship.

**Answer:** **Valdez denies each and every allegation in paragraph 241.**

242. It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

**Answer:** **Valdez denies each and every allegation in paragraph 242.**

243. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical

abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe depression and commit suicide.

**Answer:** **Valdez denies each and every allegation in paragraph 243.**

244. Plaintiff brings this count pursuant to the Illinois Wrongful Death Act as the Personal Representative on behalf of beneficiaries of the Estate of Jordan Hankins, which suffered presumed substantial pecuniary damages including loss of her society and support, grief, and lost wages and salary.

**Answer:** **Valdez admits this count is brought under the Illinois Wrongful Death Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 244.**

<div align="center">

**COUNT XVI**
**Negligent Infliction of Emotional Distress as to Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson (Survival Claim)**

</div>

245. Plaintiff Felicia Hankins re-alleges all preceding paragraphs.

**ANSWER:** **Valdez restates and reaffirms her answers to paragraphs 1 through 244 inclusive, as if fully set out here.**

246. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson had a duty to exercise reasonable care to protect Hankins from the dangers of hazing.

**Answer:** **Valdez denies she owed any duty to Jordan Hankins other than that imposed by law and denies the allegations in this Amended Complaint create circumstances under which Valdez would owe such a duty. Further answering, Paragraph 246 sets out a legal conclusion to which no response is required.**

247. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were agents, members, officers, and pledges of AKA Sorority

acting within their authority as such from June 2015 until January 2017.

        **Answer:**      **Valdez denies each and every allegation in paragraph 247.**

248.    Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson, individually, and as agents, officers, and members of AKA Sorority, breached their duty of care when they hazed Hankins. Illustrations of said hazing, cited by way of example but not limitation, are as follows:

        (a)    Verbal abuse;
        (b)    Physical abuse;
        (c)    Emotional abuse;
        (d)    Mental abuse; and
        (e)    Financial exploitation.

        **Answer:**      **Valdez denies each and every allegation in paragraph 248.**

249.    At all relevant times, Defendants knew or should have known of the risks of severe emotional distress, depression, and suicide arising from hazing.

        **Answer:**      **Valdez denies each and every allegation in paragraph 249.**

250.    At all relevant times, all Defendants were acting within the scope of their agency relationship.

        **Answer:**      **Valdez denies each and every allegation in paragraph 250.**

251.    It was foreseeable that Hankins would commit suicide as a result of the hazing activities. Defendants Anderson, Brown, Clemons, Chambers, Smith, Valdez, Thompson Greenwell, and Madlock-Henderson were advised that the hazing was triggering Hankins' PTSD, severe depression and anxiety, she was mentally unstable, and she explicitly expressed she was suicidal and had a plan to commit suicide.

        **Answer:**      **Valdez denies each and every allegation in paragraph 251.**

252.    As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Hankins was subjected/required to undergo initiation rituals and hazing consisting of physical abuse, emotional abuse, sleep deprivation, and financial exploitation, which caused her to suffer severe

56

depression and commit suicide.

> **Answer:** **Valdez denies each and every allegation in paragraph 252.**

253.    Plaintiff brings this count pursuant to the Illinois Survival Act as the Personal Representative of the Estate of Jordan Hankins, which suffered damages including being made an object of ridicule, embarrassment, humiliation, pain, and suffering.

> **Answer:** **Valdez admits this count is brought under the Illinois Survival Act, lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the personal representative and denies the remaining allegations in paragraph 253.**

WHEREFORE, Bianca Valdez denies that she is liable to the plaintiff and she prays that judgment be entered in her favor and against the plaintiff, and that she be awarded her costs.

## FIRST AFFIRMATIVE DEFENSE
### Contributory Negligence - Plaintiff

1.    The plaintiff's decedent's conduct, including but not limited to taking her own life, voluntarily seeking out and participating in the activities described in the Amended Complaint, failing to seek or obtain professional help and failing to report the activities attributable to the defendants in this Amended Complaint are more than 50% of the cause of her death.

2.    Therefore under Section 2-116 of the Illinois Code of Civil Procedure (735 ILCS 5/2-116) the plaintiff is barred from recovery.

## SECOND AFFIRMATIVE DEFENSE
### Contributory Negligence – Third Parties

3.    The plaintiff's decedent's conduct, including but not limited to failing to report abusive behavior to the University or sorority officials and failing to get other help are contributing causes of her death,

4.    Any recovery must be reduced by the amount of contributory negligence attributable to third parties.

57

**THIRD AFFIRMATIVE DEFENSE**
**Special Relationship**

5.      The Amended Complaint does not allege why Valdez owed a duty to plaintiff's decedent, and it does not allege any facts to establish a "special relationship" existed between Valdez and plaintiff's decedent.

6.      Absent a recognized duty and breach of that duty, plaintiff may not recover.

                                    Respectfully submitted,
                                    Bianca Valdez


Dated:  February 14, 2019           By: /s/        Kevin J. Moore                    
                                              Her attorney


Kevin J. Moore
LAW OFFICE OF KEVIN J. MOORE, P.C.
4365 Lawn Avenue, Suite 7
Western Springs, IL 60558
(708) 246-1595
Kevin@kjmoorelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the attached **BIANCA VALDEZ'S ANSWER TO THE AMENDED COMPLAINT** was filed this 14th day of February, 2019, through electronic means with the CM/ECF system of the United States District Court for the Northern District of Illinois, and that a notice of filing and copy of the document to be served on all parties of record. Access may be had through the Court's CM/ECF system.

_____/s/Kevin J. Moore_____